**UNITED STATES of America, Appellee,**

v.

**Norman MELENDEZ, Defendant–Appellant.**

**No. 1496, Docket 93–1753.**

United States Court of Appeals, Second Circuit.

Argued June 15, 1994.

Decided June 22, 1994.

Filed Dec. 2, 1994.

Michael E. Runowicz, New Haven, CT (U.S. Attorney's Office, District of Connecticut), for appellee.

David T. Grudberg, New Haven, CT (Jacobs, Grudberg, Belt & Dow), for defendant-appellant.

Before: LUMBARD, JACOBS, Circuit Judges, and WEINSTEIN *, Senior District Judge.

JACOBS, Circuit Judge: [1]

Defendant-appellant Norman Melendez was a postal worker who stole over $700,000 of public money from a branch of the United States Postal Service, and thereafter gave away large sums of money to friends and relatives. Following his plea of guilty to a violation of 18 U.S.C. § 641, Melendez (a) challenges the upward adjustment of his sentence for breach of trust, arguing that many other postal employees had easy access to the money he took; and (b) challenges the upward adjustment of his sentence for an aggravated role in the offense, arguing that the district court erroneously counted the recipients of defendant's gifts as "participants" in the offense as to whom defendant was "an organizer or leader." The district court sentenced Melendez to 70 months imprisonment to be followed by three years supervised release, and ordered that he pay $210,577 in restitution and a $50 special assessment.

## BACKGROUND

On September 5, 1992, the Saturday of the Labor Day weekend, two pouches containing over $700,000 in cash and checks were placed in a safe located in the Registry Room of the New Haven, Connecticut post office. The Registry Room is a caged area used to house registered mail. By way of security, entry to the Registry Room required a key, and opening the safe required a combination that was posted on the wall above the safe. Access to the Registry Room was restricted to those

---

* Honorable Jack B. Weinstein, Senior United States District Court for the Eastern District of New York, sitting by designation.

1. This appeal was resolved by summary order entered on June 22, 1994. Because we conclude that publication is warranted, we issue this opinion which in substance restates that order. We omit certain mechanical terms of the remand.

individuals (between fifteen and twenty) assigned to work in the registered mail room; at the time of the theft, Melendez was one of these individuals.

Immediately after the Labor Day weekend, post office personnel discovered that the two pouches were missing. Two days later, Kirk Davis, a postal employee, informed investigators that his fellow employee Melendez was responsible for the theft. Davis also told the inspectors that Melendez had given him over $15,000 from the theft and proceeded to surrender $15,030 to the inspectors. Melendez was arrested the following day.

During interviews conducted after the arrest of Melendez, the investigators discovered the following: (i) although Davis had originally planned to assist Melendez in the theft, he ultimately refused to participate; (ii) on the day after the theft, Rory Edwards agreed to obtain a safe deposit box to hold a large sum of money for Melendez; and (iii) three individuals, Peter Melendez, Allen London, and Kenneth Barnes, all received proceeds from the theft and spent the money for their own purposes.

On June 16, 1993, Melendez entered a plea of guilty to one count of stealing public money from a United States Post Office, in violation of 18 U.S.C. § 641. On October 29, 1993, Melendez appeared for sentencing before Judge Cabranes. Adopting the recommendations of the presentence report, Judge Cabranes imposed (i) a two-level upward adjustment because Melendez abused a position of trust in the commission of the offense, *see* U.S.S.G. § 3B1.3, and (ii) a four-level upward adjustment because Melendez was the organizer or leader of criminal activity that involved five or more persons or that was otherwise extensive, *see* U.S.S.G. § 3B1.1(a). Melendez challenges these upward adjustments.

## DISCUSSION

■ A. *Abuse of Position of Trust.* Section 3B1.3 of the Guidelines provides for a two-level upward adjustment "[i]f the defendant abused a position of public or private trust ... in a manner that significantly facilitated the commission or concealment of the offense...." As of the date of sentencing, Application Note 1 to § 3B1.3 stated that "[t]he position of trust must have contributed in some substantial way to facilitating the crime and not merely have provided an opportunity that could as easily have been afforded to other persons." Therefore, according to the Application Note, the adjustment would not apply to "an embezzlement by an ordinary bank teller."[2] Melendez argues that his theft was akin to "an embezzlement by an ordinary bank teller" because his employment simply provided an "opportunity" that was as easily afforded to any postal employee. We disagree. An ordinary bank teller receives a precise sum of money at the beginning of each day for which that teller must account penny-for-penny at day's end; the grant of trust is circumscribed by close supervision and audit. Melendez, however, was one of several people entrusted with access to large amounts of cash without the tight accounting controls that restrict a bank teller. Postal employees in general did not have access to the Registry Room and to the safe. Since at the time of the theft Melendez was given a greater degree of trust than ordinary postal employees, a two-level adjustment under § 3B1.3 was proper. *See United States v. Milligan,* 958 F.2d 345, 347 (11th Cir.1992) (postal window clerk with access to computerized accounting system given enhancement for abuse of position of trust); *United States v. Lange,* 918 F.2d 707, 710 (8th Cir.1990) (§ 3B1.3 enhancement where postal employee had direct access to express and certified mail as substitute handler one day per week).

■ B. *Role in the Offense.* Section 3B1.1(a) of the Guidelines provides for a four-level increase "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." Without making specific findings, the district court invoked § 3B1.1(a) in setting the adjusted offense

---

2. This Application Note was deleted and replaced effective November 1, 1993. Guidelines Manual, Appendix C, amendment 492. We express no view as to whether Melendez would be deemed to have held a position of trust under the amended language.

level. On appeal, Melendez challenges this decision on the ground that his criminal activity did not involve five or more participants.

"The sentencing court's findings as to the defendant's role in the offense will be overturned only if they are clearly erroneous." *United States v. Farah,* 991 F.2d 1065, 1068 (2d Cir.1993).

We agree that the district court could not impose the four-level enhancement on the ground that Melendez was the leader of a criminal activity involving five or more participants. Even if we were to accept the government's argument that we include as participants Davis (who originally planned to participate) and Edwards (who agreed after the fact to get a safe-deposit box for the stolen cash), the requisite number of five can be reached only by counting the three other individuals—London, Barnes, and Peter Melendez—who received proceeds from the theft. This would be improper on the record before us. None of these three individuals is alleged to have been involved with the crime to which Melendez pleaded guilty; rather, they were convicted of receiving stolen property. There is no evidence that the three individuals had advance knowledge of the theft, much less participated in its planning or execution. Nor does the record indicate that they expected to receive the proceeds of the theft. Accordingly, London, Barnes, and Peter Melendez cannot be considered participants for purposes of § 3B1.1(a). *See United States v. Colletti,* 984 F.2d 1339, 1346 (3d Cir.1992) (a receiver of stolen property is not deemed a participant in the theft where the "robbery was completed before [the receiver] became involved in any way, or even became aware of the criminal enterprise").

The defendant's role in the offense may nevertheless support a four-level upward adjustment if the criminal activity was (in the words of the Guideline) "otherwise extensive," regardless of the number of participants. *See United States v. Cojab,* 978 F.2d 341, 343 (7th Cir.1992); *United States v. Allibhai,* 939 F.2d 244, 252–53 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 967, 117 L.Ed.2d 133 (1992). It may well be that the district court relied upon the "otherwise ex-

tensive" prong of § 3B1.3(a) in imposing the four-level adjustment. The record is not sufficiently developed on this point, however. Accordingly, we remand to the district court for reconsideration of the four-level adjustment under § 3B1.3(a). If the court determines that the criminal activity in this case was "otherwise extensive", we ask that the court supplement the record with the factual basis for its determination.