14-1755-cr
United States v. Anselm

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20th day of May, two thousand fifteen.

PRESENT:
> PIERRE N. LEVAL,
> GERARD E. LYNCH,
> CHRISTOPHER F. DRONEY,
> *Circuit Judges.*

_____

UNITED STATES OF AMERICA,

        *Appellee*,

    v.                                     No. 14-1755-cr

MARK ANSELM,

        *Defendant-Appellant*.

_____

| | |
|---|---|
| FOR APPELLANT: | JAMES F. GREENWALD, Assistant Federal Public Defender (James P. Egan, Research and Writing Attorney, *on the brief*) *for* Lisa A. Peebles, Federal Public Defender, Syracuse, NY. |

FOR APPELLEE:                    RAJIT S. DOSANJH, Assistant United States
                                 Attorney, *for* Richard S. Hartunian, United
                                 States Attorney for the Northern District of New
                                 York, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern

District of New York (Glenn T. Suddaby, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED,**

**AND DECREED** that the judgment is **AFFIRMED**.

Mark Anselm challenges his 84-month sentence, imposed after he pleaded guilty

to (i) one count of making a false statement, in violation of 18 U.S.C. § 1001; (ii) four

counts of possession and use of an altered merchant marine license, in violation of 18

U.S.C. § 2197; and (iii) one count of aggravated identity theft, in violation of § 18 U.S.C.

1028A.  Anselm argues that the district court erred in applying a ten-level loss

enhancement under U.S.S.G. § 2B1.1 and a two-level enhancement for abuse of a

position of trust under U.S.S.G. § 3B1.3.  He also argues that his sentence is substantively

unreasonable.  We assume the parties' familiarity with the facts and procedural history.

1.    Loss Calculation

The district court found that Anselm's relevant conduct caused a loss of between

$120,000 and $200,000 to Anselm's business partner, Kocho Ognenovski.[1]  Anselm

claims that this loss calculation was erroneous in two respects.  First, he argues that the

---

[1] On appeal, Anselm "concedes . . . [that] his business dealings with Ognenovski were relevant conduct."  Appellant's Br. at 25.

2

district court erred in not subtracting from the loss amount approximately $103,000 he alleges that Ognenovski recovered in profits through his control of their business's checking accounts between April and September of 2012. Second, Anselm asserts that there was insufficient evidence to find that Ognenovski advanced Anselm the entire $170,000 alleged by Ognenovski and the government. Anselm notes that the government was able to corroborate only $147,600 of this amount. Subtracting from $147,600 the $38,000 that Ognenovski acknowledges recovering from Anselm would yield a loss below $120,000.

"A district court's factual findings relating to loss must be established by a preponderance of the evidence, and we review them for clear error." United States v. Brennan, 395 F.3d 59, 74 (2d Cir. 2005) (citations and internal quotation marks omitted). Under § 2B1.1, loss amount equals "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3(A). "Actual loss" is the "reasonably foreseeable pecuniary harm that resulted from the offense," id., and does not include "interest of any kind, . . . penalties, . . . or other similar costs," id., cmt. n.3(D)(i). "In a case involving collateral pledged or otherwise provided by the defendant," the loss amount is reduced by "the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing." Id., cmt. n.3(E)(ii). Loss is likewise reduced by any "money returned, and the fair market value of the property returned and services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the

3

offense was detected." Id., cmt. n.3(E)(I). The court "need not establish the loss with precision but rather need only make a reasonable estimate of the loss, given the available information." United States v. Carboni, 204 F.3d 39, 46 (2d Cir. 2000) (internal quotation marks omitted).

The district court's loss calculation was not clearly erroneous. At a loss amount hearing in advance of sentencing, the government referenced a default judgment obtained by Ognenovski against Anselm on November 15, 2012 in New York State Supreme Court in a suit alleging that Ognenovski advanced Anselm $170,000 under false pretenses and had recovered only $38,000 of this amount. It also produced a "Profit and Loss Detail" prepared by Ognenovski's accountant that purported to show that Anselm and Ognenovski's business lost money from April to December of 2012. Finally, the government presented a February 14, 2013 "General Assignment of Proceeds" agreement between Anselm and Ognenovski, in which Anselm acknowledged that the default judgment was "duly filed . . . and remain[ed] unpaid," and assigned his right to "to all monies . . . from any source whatsoever" to satisfy the judgment. Appellant's App'x at 187-88. In combination, these documents provide a reasonable basis for the district court's decision not to deduct the $103,000. Given the ambiguous bookkeeping, the district court reasonably relied on the fact that Anselm had acknowledged that the default judgment remained unpaid in February 2013 – months after the period in which Ognenovski supposedly recovered profits from their business that would offset some of the loss amount. While Anselm advances various arguments against crediting his

4

acknowledgment of the default judgment as evidence of the debt, a reasonable fact finder would not be compelled to accept those arguments, and the district court's reliance on that evidence rather on highly contestable inferences from bookkeeping inconsistencies was not clearly erroneous.

The district court also had a sufficient basis to find that Ognenovski advanced Anselm the entire $170,000. Notably, in the General Assignment of Proceeds, Anselm acknowledged a default judgment in a suit alleging that he was advanced $170,000. Anselm maintains that this acknowledgment should be afforded little weight because he considered himself judgment proof and thus had no reason to contest the debt. But the amount of the advance was largely corroborated by Anselm's bank records. While Anselm emphasizes that the government was able to specifically corroborate only $147,600 in advances, this corroboration consisted of matching Anselm's deposits with the amounts and dates on which Ognenovski claims to have advanced him money. The district court could reasonably conclude, given the other evidence, that Anselm simply did not deposit the remaining $22,400. While "Anselm never acknowledged receiving more than $120,000," Appellant's Br. at 25, this position was contradicted by his bank records. To the extent that Anselm's bank records did not align perfectly with either side's version, the district court did not err in crediting the government's explanation.

2.     Abuse of a Position of Trust

Section 3B1.3 of the Sentencing Guidelines provides for a two-level increase for abuse of a position of trust "in a manner that significantly facilitated the commission or

5

concealment of the offense." The enhancement requires a "direct nexus between a position of trust, the abuse of that trust, and the facilitation of the commission or concealment of the relevant offense conduct." United States v. Nuzzo, 385 F.3d 109, 117 (2d Cir. 2004). We review de novo the question of what constitutes a position of trust and review for clear error the district court's finding that the defendant's abuse of a position of trust significantly facilitated his offense. United States v. Santoro, 302 F.3d 76, 80 (2d Cir. 2002).

We reject Anselm's argument that he did not occupy a position of trust. A position of trust is one "characterized by professional or managerial discretion." U.S.S.G. § 3B1.3, cmt. n.1. "[T]he primary trait that distinguishes a position of trust from other positions is the extent to which the position provides the freedom to commit a difficult-to-detect wrong." United States v. Laljie, 184 F.3d 180, 194 (2d Cir. 1999) (internal quotation marks omitted). "Whether a given position is one of trust . . . is to be viewed from the perspective of the offense victims and . . . will depend on the practice of the employer who is victimized." Id. at 195 (citation omitted). Here, Anselm used an altered merchant marine license to gain a position as captain of a tugboat owned by Ognenovski. He performed this role without supervision, enabling him to use the tugboat for unauthorized purposes without detection. This is precisely the sort of autonomy we have held to characterize a position of trust. See, e.g., United States v. Allen, 201 F.3d 163, 166-67 (2d Cir. 2000) (holding that officer manager who "had no regular or direct supervision" and was authorized to write checks and control budget preparations held a

6

position of trust); United States v. Castagnet, 936 F.2d 57, 58, 61-62 (2d Cir. 1991) (upholding abuse of trust enhancement where airline station agent used knowledge of computer access code to issue unauthorized tickets to himself).

Anselm argues that even if he occupied a position of trust, he did not abuse that position because captaining Ognenovski's tugboat was not an act falling outside his responsibilities. But the fact that Anselm was entrusted with captaining the tugboat does not mean that any operation of the tugboat was within the scope of his responsibilities. Indeed, by taking the tugboat into Canadian waters, where he ran it aground, Anselm acted contrary to his agreement with Ognenovski, which prohibited him from using the tugboat for any projects unrelated to their joint business. Anselm's argument is akin to an accountant who embezzles money from a company claiming that he has not abused a position of trust because he was authorized to write checks. Moreover, Anselm also used his control of the tugboat to attempt to redocument it under a new name, claiming to be its owner. Thus, Anselm abused his position affording him unsupervised control of another's assets "to commit a difficult-to-detect wrong." Laljie, 184 F.3d at 194 (internal quotation marks omitted).

3.     Substantive Reasonableness

Anselm's substantive unreasonableness argument largely overlaps with his claim of procedural error: he maintains that the loss calculation cannot serve as a valid basis for a threefold increase in his Guidelines range. To the extent this is an assertion that the loss calculation or Guideline calculation was erroneous, we reject it for the reasons set forth

7

above.  We also reject his substantive reasonableness challenge as a stand-alone claim.

Substantive reasonableness review "provide[s] a backstop for those few cases that,

although procedurally correct, would nonetheless damage the administration of justice

because the sentence imposed was shockingly high, shockingly low, or otherwise

unsupportable as a matter of law."  United States v. Rigas, 583 F.3d 108, 123 (2d Cir.

2009).  Here, the district court correctly noted that Anselm demonstrated a "consistent

pattern of taking advantage of multiple victims throughout his adult life" that had

continued undeterred by his previous incarceration.  Appellant's App'x at 262-63.

Anselm's extensive criminal history, most of which involved fraudulent behavior similar

to his current offenses, was a permissible basis for the district court to conclude that a

longer sentence than Anselm had received for his previous offenses was warranted.

   We have considered all of Anselm's remaining arguments and find them to be

without merit.  Accordingly, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8