**UNITED STATES of America, Appellee,**

v.

**Matteo GAMBINO; Giuseppe Troia, also known as Joe; Francesco Stabile, also known as Frank; Francesco Mussotto, also known as Franco, also known as Ciccio, and Salvatore Cortesiano, Defendants,**

**Vincenzo Catalano, also known as Sal, Defendant–Appellant.**

**No. 197, Docket 96–1125.**

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 1996.

Decided Feb. 11, 1997.

Richard Jasper, New York City (James E. Neuman, New York City, of counsel), for Defendant–Appellant.

Thomas M. Finnegan, Assistant United States Attorney, New York City (Mary Jo White, United States Attorney, Southern District of New York, Morris J. Panner, Guy Petrillo, Assistant United States Attorneys, New York City, of counsel), for Appellee.

Before: MINER, ALTIMARI, and PARKER, Circuit Judges.

PARKER, Circuit Judge:

Defendant Vincenzo Catalano appeals from an order entered in the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*) sentencing him to sixty months imprisonment for his role in a conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846. Catalano contends that the district court erred in refusing to apply the so-called "safety valve" provisions of 18 U.S.C. § 3553(f), which would have allowed Catalano to be sentenced beneath the otherwise applicable sixty-month mandatory minimum for his offense.[1] The district judge determined that the "safety valve" did not apply because Catalano failed to satisfy the statutory requirement that he "truthfully provide[ ] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." *Id.* § 3553(f)(5). Finding no error, we affirm.

## I. BACKGROUND

Catalano and five codefendants were indicted on September 26, 1994, for heroin trafficking, including conspiracy and money laundering. Nearly a year later, Catalano

---

[1] The "safety valve" provisions of 18 U.S.C. § 3553(f) allow a defendant to be sentenced without respect to any applicable mandatory minimum sentence

if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that—

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f); *see also* USSG § 5C1.2 (incorporating language of 18 U.S.C. § 3553(f)).

pleaded guilty to a one-count superseding information charging him and two codefendants with conspiracy to distribute 100 grams or more of heroin. In his plea agreement, Catalano stipulated with the government that the mandatory minimum sentence for his offense was sixty months but that his sentencing range under the United States Sentencing Guidelines (absent the mandatory minimum) would be less.[2] Catalano further stipulated with the government that he satisfied the first four elements of the "safety valve" provisions, 18 U.S.C. § 3553(f)(1)-(4), which apply to defendants with minimal criminal history, who did not use violence in the offense or cause death or injury, and who did not play an organizing role in the offense or participate in an ongoing conspiracy. The government and Catalano agreed that Catalano would be eligible for a sentence below the mandatory minimum and within the range set by the Sentencing Guidelines provided he satisfied the final element of the "safety valve," requiring him to render truthful information and evidence regarding his offense and offenses that were part of a common scheme or plan.

The evidence against Catalano led the government to believe that he was involved in a heroin trafficking conspiracy centering around Ray's Pizzeria, a restaurant in New York City formerly operated by Aniello Ambrosio, who was indicted on narcotics charges. The government claimed that Catalano participated in two negotiations for the sale of heroin, one in June of 1992 and another in November of 1992.

As to the June transaction, the evidence against Catalano consisted of conversations between Matteo Gambino and a government informant, Calogero Lore. Gambino met with Catalano one evening at Gambino's pizzeria in Queens, New York, after Gambino told Lore that Gambino would meet with his heroin supplier that night. Gambino also made numerous calls to Catalano's pager after discussing the heroin sale with Lore. Gambino ultimately provided Lore with two heroin samples.

The evidence also pointed to Catalano's involvement in a second heroin negotiation. During October and November of 1992, codefendant Francesco Stabile promised to introduce Lore to his heroin supplier so that Lore could make a purchase. Lore thereafter met with Catalano at a diner in Queens, New York, where Catalano offered to sell Lore 350 grams of heroin for $59,500 and to give Lore the opportunity to purchase additional heroin in the future. Before completing the deal, however, Catalano began to suspect that Lore was working with the police. He did not complete the sale.

At his plea allocution on August 18, 1995, Catalano admitted that between November and December of 1992 he agreed to sell Lore heroin. He did not admit involvement in the June Gambino transaction. Catalano contended that he was not a heroin supplier. He admitted only that he found a supplier for Lore and initially agreed to act as a go-between before declining to complete the sale.

Catalano later attended a proffer meeting on November 8, 1995, with his attorney, the prosecutors, and agents of the Federal Bureau of Investigation. The government questioned Catalano about his heroin trafficking activities, including his role in the June and November transactions; his sources for heroin; his dealings with Ambrosio, his employer at Ray's Pizzeria; and Catalano's dealings with other heroin distributors, including evidence of Catalano making a deal in a wiretap. Catalano claimed to have no involvement in heroin trafficking until late 1992, claimed that he could not recall the name of his heroin supplier, and refused to admit any wrongdoing beyond what he testified to at his plea allocution. When the

---

**2.** The parties initially agreed that Catalano's base offense level would be 26, pursuant to USSG § 2D1.1(a)(3) and (c)(7) (1994), less three levels for acceptance of responsibility, corresponding to a sentencing range of 46–57 months. The parties later acknowledged, however, that in the event Catalano satisfied the "safety valve" provision, his sentencing range would be 37–46 months. Under USSG § 2D1.1(b)(4) (1995), where a defendant meets the "safety valve" criteria, two levels are subtracted from the base offense level if the offense level is 26 or higher. Catalano would have been subject to the 1995 Guidelines provision at sentencing. *See id.* § 1B1.11.

government questioned him about the calls placed to Catalano's number by Gambino, he asserted that he had no idea what the calls were about. Catalano claimed ignorance of any heroin trafficking at Ambrosio's pizzeria. He also insisted that he had no heroin sources other than a person who once agreed to sell him 350 grams of heroin at a nightclub, whom he could not identify in any detail.

Unsatisfied with Catalano's proffer, the government gave Catalano the opportunity to proffer again. Catalano refused. Accordingly, on January 29, 1996, the government submitted a letter to Judge Baer opposing application of the "safety valve." With respect to each area of Catalano's proffer, the government detailed why it believed Catalano did not tell the truth in light of the evidence against him. The district court granted Catalano a continuance of the sentencing date to allow him to respond to the government's allegations. The court instructed Catalano to "look at the last eight or ten lines on the second page" of the government's letter, where the government stated that Catalano claimed no involvement in heroin trafficking beyond late 1992 and denied any narcotics-related involvement with Gambino.

On February 1, Catalano responded to the government's letter, claiming that he did not regularly deal heroin. He claimed that codefendant Guiseppe Troia was Gambino's supplier, not Catalano. He pointed out that Lore dealt with Gambino directly, that Catalano never completed a sale, and that the substance of conversations between Catalano and Gambino were not recorded by the government. He also denied participating in narcotics trafficking at Ray's Pizzeria. Catalano also challenged the scope of the government's questioning during the proffer, arguing that many of the questions went beyond the scope of the offense to which Catalano pleaded guilty. Although Catalano indicated in a preliminary response to the government's letter that he would seek a hearing "if necessary," ultimately he never did request an evidentiary hearing.

At the February 6 sentencing proceeding, Judge Baer heard further argument from the government and Catalano. For the most part, Catalano reiterated the points made in his February 1 response. At one point in the proceeding, Judge Baer indicated his inclination to believe the government: "They have an understanding of who is telling them the truth. That's essentially their business." Catalano responded: "Yes, judge, but with all due respect, it is part of their business, but they are human and they make mistakes too. Judge, that's why we have a court. That's why we have you. We have a dispute here." In refusing to apply the safety valve, the district judge stated that he had listened to the arguments, reread the probation report and "looked carefully at [Catalano's] letters and th[e] seven page letter from the government." The district judge somewhat ambiguously concluded that "there may be a lot more that you [Catalano] know and there may not be but it does seem to me fairly difficult for you to sustain the position that you are telling us now in light of what the safety valve provision requires.... So I am sentencing you to 60 months without the advantage of the safety valve provision...." This appeal followed.

## II. DISCUSSION

### A. *The Sentencing Proceedings: The District Court's Findings and Catalano's Burden of Proof.*

Catalano's argument for reversal turns in large part upon the question of which party shoulders the burden of proving the applicability of the "safety valve," the government or the defendant. This is so because, as Catalano argues, Judge Baer did not make a clear finding that Catalano had been untruthful in his proffer. We agree that the district court's finding is not a model of clarity. However, the district court's finding—"there may be a lot more that you know and there may not be but it does seem to me fairly difficult for you to sustain the position that you are telling us now in light of what the safety valve provision requires"—can be fairly read as an indication by the court that Catalano failed to satisfy the burden of proving the applicability of the safety valve, in light of the government's detailed submission recounting the various ways the government believed that Catalano lied.

First, we reject Catalano's argument that the district judge improperly believed that he was bound to follow the prosecution's sentencing recommendation. Judge Baer directed Catalano to specific allegations in the government's letter that gave the court concern. He stated that he "looked carefully" at the letters submitted by both parties. Finally, the district judge assured Catalano that he was "fully aware" that he had to consider both sides of the truthfulness issue. The fact that the district court directed Catalano to the areas of the government's letter that gave the court concern does not support Catalano's contention that the court believed it was required to adopt the government's views.

Under the statute, the government must be "afforded the opportunity to make a recommendation" regarding whether the provision's prerequisites have been satisfied. 18 U.S.C. § 3553(f). The plain language of the statute required the district court to make its own determination whether Catalano satisfied the safety valve provision, in light of the entire record including the government's recommendation. *See United States v. Acosta–Olivas,* 71 F.3d 375, 379 (10th Cir.1995). Given the fact that Catalano bore the burden of proving the applicability of the safety valve, as we next explain, it was entirely proper for the district court to point Catalano to those areas of the government's recommendation that gave the court concern.[3]

Generally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof. *See United States v. Shonubi,* 998 F.2d 84, 90 (2d Cir.1993) (defendant must prove role in the offense by a preponderance of the evidence to take advantage of minor role reduction) (citing *United States v. Lopez,* 937 F.2d 716, 726–27 (2d Cir.1991)); *see also United States v. Flanagan,* 80 F.3d 143, 146 (5th Cir.1996) (rejecting defendant's argument that he did not have the burden of demonstrating the applicability of the safety valve, reasoning, in part, that "as a general rule, the party seeking the

adjustment in the sentence is the party that has the burden of proving the facts to support the adjustment"). Catalano sought to take advantage of just such a downward adjustment and we see no reason to depart from this general rule here.

As numerous other courts have found, the plain language of the "safety valve" places the burden on the defendant to provide truthful information to the government. *See, e.g., Flanagan,* 80 F.3d at 146; *United States v. Ivester,* 75 F.3d 182, 184–85 (4th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996); *United States v. Arrington,* 73 F.3d 144, 148 (7th Cir.1996); *United States v. Wrenn,* 66 F.3d 1, 3 (1st Cir.1995). It follows that the burden should fall on the defendant to *prove* to the court that he has provided the requisite information if he is to receive the benefit of the statute. *See Arrington,* 73 F.3d at 148 ("[A] defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities."). The defendant has full knowledge of the scope of his wrongdoing, and it is the defendant who seeks an adjustment in the otherwise applicable sentencing range.

In light of Catalano's burden of proof, the district court properly concluded that Catalano failed to show that he provided truthful information to the government. The government detailed the reasons why it believed Catalano was not telling the truth at his proffer and Catalano came forward with no plausible response to the government's letter. Catalano claimed, incredibly, that he had no regular heroin supplier and that someone whom he did not know agreed to sell him close to $60,000 worth of heroin at a nightclub. He claimed not to know why Gambino regularly beeped his pager. He also claimed not to know anything about the activities at Ambrosio's pizzeria, a major area of narcotics trafficking. As we have stated, "[a] sentencing court is not bound to accept [a] defendant's self-serving characterizations of his role in an offense," *Shonubi,* 998 F.2d at 90, where, as here, there is no evidence to support the defendant's story.

---

3. The fact that the district court did not conduct an evidentiary hearing does not detract from this conclusion. We note that Catalano did not request a hearing. Presumably, if Catalano had evidence he wished to present, he would have done so.

■ Catalano's burden of proof also disposes of his argument that the trial judge failed to make adequate factual findings. Factual findings must be made "with sufficient clarity to permit appellate review." *United States v. Reed*, 49 F.3d 895, 901 (2d Cir.1995); *see also United States v. Lanni*, 970 F.2d 1092, 1094 (2d Cir.1992) (findings must permit "meaningful appellate review"). Further factual findings will be required where we are unable to discern from the record the basis of the district court's ruling. *See Reed*, 49 F.3d at 901. The single issue before the court at sentencing was whether Catalano had met his burden of proving that he had "truthfully provided ... all information and evidence ... concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5). Catalano had to prove that he had been truthful in order to receive a sentence below the mandatory minimum. The government contended Catalano failed in that regard and Catalano contended otherwise.

■ The district court judge indicated that after considering all of the materials before him "there may be a lot more that you [Catalano] know and there may not be but it does seem to me fairly difficult for you to sustain the position that you are telling us now in light of what the safety valve provision requires" and then went on to impose sentence "without the advantage of the safety valve provision." We have no difficulty in this context construing the district court's statement as a finding that Catalano failed to meet his burden of proving that he had truthfully provided all the information available to him. The record shows that the court based this finding on the detailed representations in the government's letter, which the court credited over Catalano's implausible arguments in rebuttal. The court even pointed Catalano to the specific allegations in the government's letter that caused the court concern, and offered Catalano ample opportunity to respond. Although the district court's finding is a bit ambiguous, in light of the record, and the single issue presented to the district court, the basis of the court's ruling is plain. Accordingly, we reject this aspect of Catalano's argument.

**B.** *The Scope of Catalano's "Safety Valve" Disclosure Obligations.*

Catalano also argues that the scope of the government's questioning at the proffer meeting was too broad, and that he should not have been forced to answer questions that went beyond the offense to which he pleaded guilty in order to satisfy the "safety valve." We find that the scope of the proffer meeting was not too broad.

■ To take advantage of the "safety valve," a defendant must provide truthful information regarding "the offense or offenses that were part of the same course of conduct or of a common scheme or plan." 18 U.S.C. § 3553(f)(5); USSG § 5C1.2(5) (1995). The defendant therefore must provide truthful information regarding "the offense of conviction and all relevant conduct." USSG § 5C1.2, comment. (n.3); *see also Acosta–Olivas*, 71 F.3d at 378. Contrary to Catalano's argument, this required him to disclose information beyond the conspiracy period alleged in the indictment. He had to disclose information regarding conduct, including the related acts of others, occurring "in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." USSG § 1B1.3(a)(1). He also had to provide information regarding acts occurring as part of a "common scheme or plan" related to his offense of conviction, and as part of the "same course of conduct." *Id.* § 1B1.3(a)(2) & comment. (n.9).

■ The questions Catalano complains about, regarding his interception over the wiretap and his knowledge of narcotics trafficking at Ray's Pizzeria, properly sought information regarding Catalano's "relevant conduct." The questions concerned a "common scheme or plan," as they related to conduct involving the same accomplices, a common purpose, and the same *modus operandi. See id.* The questions also related to the "same course of conduct" as Catalano's offense, because the activities were part of an alleged ongoing series of offenses. *See id.* comment. (n.9). Accordingly, the questions were not too broad.

■ Moreover, Catalano failed to provide information regarding the offense of conviction, including his denial of knowledge regarding the Gambino heroin transactions and

his inability to recall the name of his heroin source in November of 1992. It is settled that Catalano had an obligation to answer these questions truthfully. *See United States v. Rodriguez,* 69 F.3d 136, 143–44 (7th Cir.1995) (safety valve relief properly denied where defendant failed to identify supplier or buyers of narcotics); *Wrenn,* 66 F.3d at 3 (safety valve relief properly denied where defendant "did not provide the government with *all* of the information and evidence he had concerning the very crime to which he pleaded guilty," including names of customers). The district court focused on these issues, not the allegedly overbroad questions about which Catalano complains. Accordingly, Catalano's argument must be rejected on this ground as well.

## III. CONCLUSION

For the foregoing reasons, we affirm Catalano's sentence of sixty months.