UNITED STATES of America,
Appellee,

v.

Nelson JIMENEZ, Defendant–
Appellant.

Docket No. 05–2221–CR.

United States Court of Appeals,
Second Circuit.

Argued: June 5, 2006.

Decided: June 13, 2006.

Henry J. Steinglass, New York, NY, for Defendant–Appellant.

Harry Sandick, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, and Karl Metzner, Assistant United States Attorney, on the brief), New York, NY, for Appellee.

Before WALKER, Chief Judge, NEWMAN and SOTOMAYOR, Circuit Judges.

PER CURIAM.

In *United States v. Booker*, the Supreme Court held that the mandatory application of the Sentencing Guidelines violates the Sixth Amendment where any fact found by a judge (other than a prior conviction) is necessary to support a sentence greater than that authorized by the facts found solely by a jury or admitted by the defendant. 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The Court-fashioned remedy was to excise only those provisions of the Sentencing Reform Act that rendered mandatory the application of the Sentencing Guidelines. *Id.* at 245. *Booker* did not purport to rewrite the Act as a whole.

In the instant appeal from an April 19, 2005, judgment of the United States District Court for the Southern District of New York (Lawrence M. McKenna, *Judge)*, the defendant contends that, after *Booker*, we should revisit our decisions that place the burden of proof on the defendant to establish that he or she has satisfied the fifth requirement of the so-called "safety valve" provision, which permits the imposition of a sentence below the mandatory-minimum sentence prescribed in an underlying-offense statute. 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. That fifth requirement is, in substance, that the defendant fully disclose to the government all offense-related information in the defendant's possession. 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). We see no reason to revisit those precedents and find no error in the imposition of the defendant's sentence. Accordingly, we affirm the judgment of the district court.

## BACKGROUND

Defendant-appellant Nelson Jimenez was arrested and pled guilty to distribution and possession with the intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 812 and 841(a)(1), (b)(1)(B). During his plea allocution, Jimenez admitted to all relevant facts in support of the charged offense, including the fact that he planned to distribute, and was found in possession of, approximately 400 grams of heroin. Jimenez was informed that, under the statute to which he pled guilty, he faced a mandatory minimum sentence of five years' imprisonment based on the quantity of heroin attributed to him. See 21 U.S.C. § 841(b)(1)(B).

In anticipation of Jimenez's sentencing, the Probation Office prepared a presen-tence investigation report. Based on adjustments that have not been challenged on this appeal, the Probation Office determined that Jimenez's total offense level was 25. Because Jimenez's criminal history fell within Criminal History Category I, he faced a Guidelines sentencing range of 57 to 71 months' imprisonment. The bottom end of Jimenez's sentencing range, however, was further proscribed by the underlying-offense statute, which called for a mandatory-minimum sentence of 60 months' imprisonment. 21 U.S.C. § 841(b)(1)(B). As a result, the Probation Office concluded that Jimenez's sentencing range was between 60 and 71 months' imprisonment. The Probation Office did not recommend that Jimenez receive relief from the mandatory-minimum sentence pursuant to the safety-valve provision codified at 18 U.S.C. § 3553(f), and it recommended that Jimenez receive a 60–month term of imprisonment.

Prior to his sentencing, Jimenez filed a memorandum with the district court, in which he argued both that he was eligible for a sentence beneath the 60–month mandatory-minimum sentence, based on the safety-valve provision, and for an additional two-level reduction to his total offense level based on former Guideline § 2D1.1(b)(6) (2002), which provided for such a reduction where a defendant satisfied each of the five criteria for safety-valve relief.[1] According to Jimenez, there was no dispute—based on prior submissions between the parties—that he met each of the first four criteria for safety-valve relief. As to the fifth criterion for relief, which provides that a defendant must have "truthfully provided to the Government all information and evidence the defendant has concerning the offense or

---

**1.** The provisions formerly codified at Guideline § 2D1.1(b)(6) (2002) were subsequently moved to subsection (b)(7), see U.S.S.G. § 2D1.1(b)(7) (2005), and later moved to subsection (b)(9), *see id.* § 2D1.1 (b)(9) (Supp. Mar. 27, 2006).

offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5), Jimenez argued that he had fully disclosed to the government all the information that he had concerning his involvement in the distribution of heroin. Jimenez stated that his involvement was limited solely to the conduct that gave rise to his arrest; the government simply refused to accept the fact that he had no prior involvement in the drug trade.

Jimenez's sentencing arguments were premised on statements that he had made to the government during a post-arrest interview and two separate proffer sessions. During these meetings, Jimenez provided the following account to the government: (a) Jimenez met an individual known as "Primo" while employed as a livery cab driver; (b) although he had only met Primo briefly on two separate occasions and was not sure whether Primo was a drug dealer, Jimenez decided to ask Primo if he could help him sell heroin to an acquaintance (who later turned out to be a confidential informant); (c) Primo told Jimenez that he would be willing to provide Jimenez with heroin to sell to his acquaintance; (d) because Primo was highly suspicious of law-enforcement surveillance, however, Primo would not meet Jimenez's acquaintance until after another individual first met with Jimenez and Jimenez's acquaintance; (e) another individual, who posed as a "fake Primo," met with Jimenez and his acquaintance; (f) during the course of this meeting, Jimenez discussed the subject of "mules" (smugglers who sometimes ingest narcotics), but only to enhance his credibility with his acquaintance (the confidential informant); (g) the fake Primo reported to Primo that Jimenez's acquaintance could not be trusted; (h) despite the fake Primo's suspicions, Primo agreed to provide heroin to Jimenez's acquaintance; (i) in February 2002, Jimenez provided the confidential informant with 100 grams of heroin; (j) later, in May 2002, Jimenez traveled by plane from New York to Houston, Texas, in order to pick up approximately 400 grams of heroin, which he intended to sell to the confidential informant on Primo's behalf; (k) Jimenez intended to return by train, but because of the high-level of police activity at the train station, he decided to rent a car to make the return trip; (l) lacking a credit card, Jimenez called a friend in New York and offered to pay to fly his friend to Houston so that his friend could rent a car to make the return trip; (m) Jimenez's friend (who according to Jimenez had no knowledge about the nature of Jimenez's trip) agreed, flew to Houston, and rented the car on Jimenez's behalf; (n) despite all his difficulties, Jimenez was assured only $800 by Primo for making the trip, which was less than the cost of his plane tickets and other travel expenses; (o) Jimenez was arrested on May 17, 2002, when he attempted to sell to the confidential informant the heroin that he had picked up in Houston. Jimenez maintained that, with the exception of the two transactions that gave rise to his arrest, he had never engaged in drug dealing.

In a responsive letter filed with the district court, the government argued that Jimenez was not eligible for safety-valve relief because he had "not provided complete and truthful information about his involvement in the offense and his co-conspirators," which rendered "him ineligible for a sentence less than five years' imprisonment" and also deprived "him of a two-level reduction to his offense level" pursuant to former Guideline § 2D1.1(b)(6). In the government's view, Jimenez's "account of his offense lack[ed] credibility." In support of this proposition, the government argued: (a) although Jimenez contended

that he had neither any prior experience in the drug trade nor any prior relationship with Primo, he was entrusted with the responsibility for dealing approximately $28,000 in heroin without supervision; (b) despite his apparent concern about police surveillance, Primo was willing to deal with both Jimenez and Jimenez's acquaintance, even though Primo had only met Jimenez on two prior occasions, and even though Primo was apparently warned by the "fake Primo" that Jimenez's acquaintance could not be trusted; (c) Jimenez's story about the "fake Primo" sounded "contrived," and it was "more likely that Jimenez invented the 'fake Primo' story in order to try to protect Primo from prosecution"; (d) given the limited amount of money that Jimenez claimed he was entitled to receive based on his trip to Texas and the fact that Jimenez's friend agreed to fly down to Texas to rent a car without any knowledge of the nature of Jimenez's trip, Jimenez's "account of his trip to Texas sound[ed] similarly contrived and designed to protect himself and his friend"; and (e) it was difficult to believe that Jimenez lacked specific knowledge of the transportation of drug swallowers, given the specific factual assertions made by Jimenez during his meeting with the confidential informant and the "fake Primo." In the government's view, "There [were] simply too many coincidences and unlikely events in Jimenez's story for it to be believed." The government concluded, "Jimenez has not come forward and truthfully provided information about his actions and the actions of his co-conspirators." Accordingly, the government argued that Jimenez had not carried his burden of proving his entitlement to safety-valve relief.

On June 12, 2003, the district court conducted a *Fatico* hearing to "evaluate the credibility of [Jimenez]" in order to determine whether he had satisfied his burden under the fifth requirement for safety-valve relief. Jimenez was the sole witness at the hearing; his testimony mirrored the statements that he had made to the government during his proffer sessions.

On May 5, 2004, after receiving additional letters from both the government and the defendant, the district court issued an order denying Jimenez's application for safety-valve relief. The district court concluded that Jimenez did "not carr[y][his] burden of establishing that he has satisfied the requirement that he truthfully disclose all that he knows 'concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.'" In support of this conclusion, the district court stated that it was "not convinced that the defendant had no prior experience in drug transactions and that he did not know the [co-conspirator] better than he [had, up until that point], acknowledged." Accordingly, the district court held that Jimenez was not eligible for safety-valve relief.

In the period after the district court issued its order rejecting safety-valve relief, but before imposing sentence, the Supreme Court decided both *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). In response to these decisions, the parties submitted a series of letters to the district court, in which they argued what effect, if any, those decisions had on the imposition of the 5–year mandatory-minimum sentence. In a letter dated March 31, 2005, Jimenez argued that the authority upon which the district court placed the burden of proof on the defendant—*United States v. Gambino*, 106 F.3d 1105 (2d Cir.1997)—was "no longer good law." Jimenez asserted that, after *Blakely* and *Booker*, "[t]he burden should be placed on the prosecution to prove un-

truthfulness beyond a reasonable doubt" and that the government could not meet its burden under this standard. The government disputed these assertions in a letter dated April 11, 2005. Specifically, the government argued that Jimenez's admission of the drug quantity in his plea allocution was sufficient to overcome any Sixth Amendment challenge under *Blakely* or *Booker*. The government also argued that our decisional law placing the burden of proof on the defendant to show his entitlement to safety-valve relief remained unchanged following *Blakely* or *Booker*.

On April 19, 2005, the district court convened a hearing to sentence Jimenez. After listening to argument on safety-valve issues and the underlying sentence, the district court determined that it remained bound by our law regarding the burden of proof for safety-valve eligibility. The district court clarified, however, that its sentencing decision was affected by the allocation of the burden of proof:

> So it is absolutely clear and just so that the record is clear, absent the mandatory minimum, I would certainly have sentenced the defendant to less than 60 months of imprisonment.

> I also want to point out that [the government's sentencing] letter suggests that I ruled that the defendant was untruthful and testified falsely [at the *Fatico* hearing]. In the heat of argument you can say it that way, but that is not really what I did. There is a difference.

> I ruled that the defendant had not proved by a preponderance that he truthfully disclosed all that he knew about the offense during the proffers. That is not a finding that he testified falsely. It is a finding that he didn't sustain his burden.

> If the government had the burden under *Blakely* and *Booker* and the government were required to prove beyond a reasonable doubt that the defendant did not truthfully disclose all that he knew, I would not have found that the government ... had proved that beyond a reasonable doubt.... I really have not thought about whether the government proved it by a preponderance of the evidence or by clear and convincing evidence because *Booker* talks in terms of beyond a reasonable doubt. But that would only be in the case, of course, if the burden of proof was assigned to the government.

> So I think that, as a matter of law, I am bound to apply the mandatory minimum of 60 months.

The district court sentenced Jimenez to 60 months' imprisonment, to be followed by four years' supervised release, and imposed the mandatory special assessment of $100. This appeal followed.

## DISCUSSION

On appeal, Jimenez argues that, after *Booker*, facts that trigger an increase in the sentencing range, including those which relate to safety-valve eligibility, must be proved by the government either to the sentencing judge by a preponderance of the evidence or to a jury beyond a reasonable doubt. First, Jimenez argues that *Booker* undercut the rationale upon which we placed the burden of proof on the defendant in *United States v. Gambino*, 106 F.3d 1105 (2d Cir.1997). As a result, Jimenez contends that we should now allocate to the government the burden to prove, by a preponderance of the evidence, that Jimenez is ineligible for safety-valve relief. Second, Jimenez argues that, even though he admitted to all facts necessary to trigger the imposition of the mandatory minimum sentence codified at 21 U.S.C. § 841(b)(1)(B), the Sixth Amendment requires the government to prove

beyond a reasonable doubt those facts which would render him ineligible for safety-valve relief. We address each argument in turn.

## I. The Rationale Undergirding *Gambino*

In *Gambino*, we held that, in order to satisfy the fifth requirement of the safety-valve provision, the defendant must prove to the sentencing court, by a preponderance of the evidence, that he has provided the requisite truthful information to the government. 106 F.3d at 1110; *accord United States v. Ortiz*, 136 F.3d 882, 883 (2d Cir.1997) (per curiam). Our decision placing the burden of proof on the defendant rested upon two points of support. First, we explained that "[g]enerally, under the Sentencing Guidelines, a defendant who seeks to take advantage of a sentencing adjustment carries the burden of proof." *Gambino*, 106 F.3d at 1110. After equating the defendant's request for safety-valve relief to that of a downward adjustment, we stated that we saw "no reason to depart from [the] general rule," which places the burden of proof squarely on the defendant. *Id.* Second, we observed that, "[a]s numerous other courts have found, the plain language of the 'safety valve' places the burden on the defendant to provide truthful information to the government." *Id.* From this observation we concluded:

> It follows that the burden should fall on the defendant to *prove* to the court that he has provided the requisite information if he is to receive the benefit of the statute. *See [United States v.] Arrington*, 73 F.3d [144,] 148 [(7th Cir.1996)] ("[A] defendant must demonstrate to the court that he has made a good faith attempt to cooperate with the authorities."). The defendant has full knowledge of the scope of his wrongdoing, and it is the defendant who seeks an adjust-

ment in the otherwise applicable sentencing range.

*Id.* (last alteration in the original).

█ Jimenez attempts to undermine the first rationale offered in *Gambino;* he does not seriously challenge the second. In essence, Jimenez argues that, after *Booker*, "the 'safety valve' is no longer merely a sentencing adjustment." Whereas before *Booker*, "the 'safety valve' lowered the sentence range by requiring a guidelines sentence, rather than the mandatory minimum," Jimenez argues that "[a]fter *Booker*, the 'safety valve' permits the District Judge—after considering the Guidelines and the other factors in 18 U.S.C. § 3553(a)—to impose" a non-Guidelines sentence. Based on the increased discretion that district courts now enjoy following *Booker*, Jimenez argues that the burden of proof with respect to safety-valve relief should be placed on the government. We disagree.

The fact that mandatory minimums have taken on increased significance after *Booker*—in that they remain binding on the district courts and work to restrain their newly acquired discretion—does not undermine our decision to place the burden of proof on the defendant to demonstrate his eligibility for safety-valve relief. The operation of the safety-valve provision does not admit to imposing on the government the burden to disprove a defendant's eligibility for relief from a mandatory-minimum sentence. See 18 U.S.C. § 3553(f). Once the government has carried its burden to prove those facts which trigger imposition of a mandatory-minimum sentence, the safety valve operates to impose on the defendant the burden to prove that he is eligible for relief from the mandatory-minimum sentence. See H.R.Rep. No. 103–460, at 5 (1994), 1994 WL 107571 (stating that members of the House Judiciary

Subcommittee on Crime and Criminal Justice determined that "the integrity and effectiveness of controlled substance mandatory minimums could in fact be strengthened if a limited 'safety valve' from the operation of these penalties was created and made applicable to the least culpable offenders"). The safety valve certainly was not intended to impose on the government five additional elements that it must prove before triggering the imposition of a mandatory-minimum sentence. See *id.* at 6 (stating that "Defendants seeking to benefit from" § 3553(f) must satisfy each of the five criteria for relief (emphasis added)).

Absent a viable constitutional claim, we can find no basis for revisiting our decision in *Gambino*. Accordingly, we hold that the district court did not err when it imposed on Jimenez, in order to demonstrate his eligibility for safety-valve relief, the burden to prove that he had provided the requisite truthful information to the government.

## II. Sixth Amendment Claim

■ In the alternative, Jimenez appears to argue that, even though he admitted to all the facts necessary to trigger the imposition of the 60–month mandatory-minimum sentence, the Sixth Amendment requires the government to prove to a jury beyond a reasonable doubt that Jimenez is ineligible for safety-valve relief, including that he withheld truthful information from the government.

We recently rejected a similar argument in *United States v. Holguin*, 436 F.3d 111 (2d Cir.2006), *cert. denied*, 547 U.S. ——, 126 S.Ct. 2367, 165 L.Ed.2d 290, 2006 WL 1221968 (June 5, 2006). There, the defendant argued that the district court violated his Fifth and Sixth Amendment rights when it denied his request for safety-valve relief under § 3553(f) after finding, by a

preponderance of the evidence, that he had served as a supervisor in the commission of the underlying offense. *Holguin*, 436 F.3d at 113–14; *see also* 18 U.S.C. § 3553(f)(4) (precluding "an organizer, leader, manager, or supervisor of others in the offense" from obtaining safety-valve relief); *accord* U.S.S.G. § 5C1.2(a)(4). Because the safety-valve provisions serve as a mechanism for *reducing* sentences, rather than *increasing* them, we held that *Apprendi, Blakely*, and *Booker* do not apply to the operation of the safety valve. *Holguin*, 436 F.3d at 117–18. Here, as in *Holguin*, Jimenez attempts to "turn[ ] § 3553(f) on its head by converting the eligibility criteria for a sentence *reduction* into elements of the offense which *increase* his maximum sentence." *Id.* at 117 (internal quotation marks omitted). We are not persuaded. As we explained in *Holguin*:

> The statute does not require a district court to make affirmative findings on the safety valve before applying the mandatory minimum sentence in 21 U.S.C. § 841(b)(1)(B). Rather, the mandatory minimum applies whenever the quantity of [heroin] involves [100] grams or more. *See* 21 U.S.C. § 841(b)(1)(B). There is no doubt in this case that the drug quantity triggering the five-year mandatory minimum and forty-year maximum of subsection 841(b)(1)(B) was proved beyond a reasonable doubt by the guilty plea. Therefore, the applicable statutory sentencing range based on [Jimenez's] admissions was five to forty years. The District Court's . . . finding that he [did not carry his burden of establishing that he provided the requisite truthful information to the government] did not alter this range by substituting a higher maximum for the one otherwise applicable to the case.

*Id.* at 117–18 (footnote omitted).

To the extent that Jimenez argues that *Harris v. United States*, 536 U.S. 545, 122

S.Ct. 2406, 153 L.Ed.2d 524 (2002)—a case upon which *Holguin* relied, 436 F.3d at 118—is no longer good law, he may petition the Supreme Court to review his conviction and overrule that decision. We lack the authority to overrule decisions of the Supreme Court.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.