UNITED STATES of America,
Appellee,

v.

Anthony BLACKSHEAR, also known
as Pops, Defendant,

Dupree Harris, also known as Turf, also
known as Sug, William Cobb, also
known as Weebo, Lindsey Ann
McDonnell, Defendant–Appellants.

Nos. 06–1267–cr(L), 06–3514–cr(CON),
06–3945–cr(CON).

United States Court of Appeals,
Second Circuit.

March 17, 2008.

Stacey Richman, Bronx, NY, for Dupree Harris.

Philip Katowitz, Brooklyn, N.Y. for William Cobb.

Joel S. Cohen, New York, N.Y. for Lindsey Ann McDonnell.

Lee J. Freedman, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, on the brief; David C. James, Assistant United States Attorney, of counsel), Brooklyn, NY, for Appellee.

Present: Hon. JOSEPH M. McLAUGHLIN, Hon. RICHARD C. WESLEY, Circuit Judges, Hon. BRIAN M. COGAN, District Judge.[1]

1. The Honorable Brian M. Cogan, United States District Court for the Eastern District of New York, sitting by designation.

## SUMMARY ORDER

Defendant–Appellants Lindsey Ann McDonnell, William Cobb, and Dupree Harris appeal from judgments of the United States District Court for the Eastern District of New York (Ross, *J.*), entered on March 17, 2006, August 18, 2006, and August 2, 2006, respectively. McDonnell was convicted of two counts of conspiracy to distribute at least 50 grams of crack cocaine ("crack") in violation of 21 U.S.C. § 846. Cobb was convicted of conspiracy to distribute at least 50 grams of crack in violation of 21 U.S.C. § 846 and distributing an unspecified amount of crack in violation of 21 U.S.C. § 841(a). Harris was convicted of conspiracy to distribute at least 50 grams of crack in violation of 21 U.S.C. § 846, distributing an unspecified amount of crack in violation of 21 U.S.C. § 841(a), and brandishing a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A)(ii). Familiarity by the parties is assumed as to the facts, the procedural context, and the specification of appellate issues.

### 1. *Appellants' Motions for Mistrial*

■ Appellants argue that the district court should have ordered a mistrial based on three pieces of allegedly prejudicial testimony: (1) Peter Helm's statements that Cobb told him that Harris was "his hit man" and that Harris had "killed two"; (2) Darren Barrett's statement that the government told him that if he was "in fear for [his] life," he would not "be just blown off"; and (3) Gary Cleveland's statement that he had "federal agents that protect" him.

Helm's statements were not grounds for a mistrial, since they were admissible statements made in furtherance of the conspiracy. The record shows that, at the time the statements were made, Helm was buying distribution level amounts of crack from and for Harris and Cobb, demonstrating that he was a member of the conspiracy. Helm told the court that he was positive that he heard these statements directly from Cobb, and there was no basis for concluding that the statement was a reference to Harris's previous murder indictment.

■ Barrett's and Cleveland's statements were not so prejudicial as to be grounds for a mistrial. Moreover, a curative instruction (drafted by defense counsel) was given following Barrett's statement and the court offered to give a curative instruction after Cleveland's statement. The two statements were, at most, ambiguous and veiled references to some federal protection, mentioning no particular defendant and no specific threat. Neither was as severe as others made where mistrials were also held to be inappropriate. *See United States v. Fermin,* 32 F.3d 674, 677 (2d Cir.1994) (calling witness's casual mention of the defendants' "criminal histories" "inadvertent" and "ambiguous"), *overruled on other grounds by Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *United States v. Rivera,* 971 F.2d 876, 888 (2d Cir.1992) (admitting witness's cooperation agreement into evidence without redacting a reference to the federal witness protection program caused "no reasonable possibility of prejudice").

### 2. *Lindsey McDonnell*

#### A. *Sufficiency of the Evidence*

■ Questioning the credibility of the government's witnesses, McDonnell argues that the Government failed to prove her guilt beyond a reasonable doubt. A defendant challenging the sufficiency of the evidence supporting a conviction bears a

"heavy burden." *United States v. Diaz,* 176 F.3d 52, 89 (2d Cir.1999); *United States v. Oguns,* 921 F.2d 442, 449 (2d Cir.1990). Deference to a jury's determination of credibility is at the heart of appellate review for sufficiency. *See United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989) ("[W]e will not disturb the jury's findings with respect to the witnesses' credibility . . . [since] the proper place for a challenge to a witness's credibility is in cross-examination and in subsequent argument to the jury, not in an appellate brief." (internal quotation omitted)). Moreover, the fact that some of the testimony came from accomplices is not relevant, since "[w]hether or not there is corroboration for an accomplice's testimony, the weight of the evidence is a matter for argument to the jury, not a ground for reversal on appeal." *United States v. Parker,* 903 F.2d 91, 97 (2d Cir.1990). It is clear then, that McDonnell's credibility argument must fail.

### B. *Severance*

██ McDonnell also argues that the district court erred in denying her motion for severance under Federal Rule of Criminal Procedure 14, arguing that she would suffer from so-called "spillover prejudice" from evidence introduced against her alleged co-conspirators Cobb and Harris.

Motions for severance are committed to the discretion of the trial court and "the sound exercise of that discretion is virtually unreviewable." *United States v. Amato,* 15 F.3d 230, 237 (2d Cir.1994) (quoting *United States v. Arocena,* 778 F.2d 943, 949 (2d Cir.1985)). A reversal is required only where the defendant suffered from a "prejudice so substantial as to amount to a 'miscarriage of justice.'" *United States v. Cervone,* 907 F.2d 332, 341 (2d Cir.1990) (citation omitted). We have held that the "fact that testimony against a codefendant

may be harmful is not a ground for severance if that testimony would also be admissible against the moving defendant tried separately." *United States v. Rosa,* 11 F.3d 315, 341 (2d Cir.1993). This rule makes severance rare in conspiracy cases where the "government [is] . . . entitled to show the entire range of evidence of the conspiracy against each appellant," even where "one appellant's role in the conspiracy may have been smaller or less central than that of certain other co-conspirators." *United States v. Nersesian,* 824 F.2d 1294, 1304 (2d Cir.1987). All of the evidence McDonnell complains prejudiced her would have been admissible against her in a separate trial, since all of the evidence related to the conspiracy. Accordingly, we reject her argument that the district court erred in denying her severance motion.

### 3. *Dupree Harris*

#### A. *Anonymous and Partially Sequestered Jury*

██ Before trial, the district court ordered an anonymous and partially sequestered jury. Specifically, the court ordered that the names, addresses and workplaces of members of both the venire and petit juries not be revealed and that the jurors eat lunch together and be accompanied in and out of the courthouse by members of the U.S. Marshal service to avoid mingling in the courthouse. Harris now challenges this decision on appeal.

We have identified several factors which might be considered in deciding whether to empanel an anonymous jury. Among them are (1) the defendant's capacity to threaten jurors; (2) defendant's prior attempts to interfere with the judicial process; and (3) the likelihood of publicity. *See United States v. Thai,* 29 F.3d 785, 801 (2d Cir.1994); *United States v. Vario,* 943 F.2d 236, 240–41 (2d Cir.1991); *United States v. Tutino,* 883 F.2d 1125, 1133 (2d

Cir.1989). In some cases, "a demonstrable history or likelihood of obstruction of justice on the part of the defendant .... would be sufficient in and of itself ... to warrant an anonymous jury." *Vario*, 943 F.2d at 241. Here, the government has more than proved its case. Although none of Harris's prior incidents involved jurors, he consistently attempted to obstruct justice—by bribing witnesses and by intimidating witnesses. Two judges, a New York State Supreme Court justice and a district court judge, both determined that Harris posed a risk to potential witnesses, and the Bureau of Prisons implemented special measures to restrict his communication with other inmates. It does not seem unreasonable to infer that jurors might also be threatened. The court's decision is echoed by the possibility of publicity surrounding the trial, at least at the time the decision to empanel an anonymous jury was made. Further, only one defendant (the one for whom the anonymous jury was necessary) raises this issue on appeal, and even he does not point to any concrete harm or prejudice suffered as a result. We agree with the district court that an anonymous jury was appropriate.

## B. *Harris's Cross–Examination of Naomi Harley*

▮ Harris also argues that the district court's "curtailment" of his cross-examination of Naomi Harley regarding her purportedly prior inconsistent statement made while testifying at Harris's 2004 trial for murder violated his Sixth Amendment right to confrontation. Despite couching the argument in constitutional terms, we have consistently reviewed these decisions as evidentiary, and "the decision to restrict cross-examination will not be reversed absent an abuse of discretion," *United States v. Lawes*, 292 F.3d 123, 131 (2d Cir.2002) (quotation marks omitted).

An attorney may "seek to impeach a witness by eliciting that he or she testified differently regarding a material matter at a prior trial, [but] it is well within the discretion of the trial judge to disallow any testimony as to the outcome of the prior trial, where that information would be prejudicial." *United States v. Wilkerson*, 361 F.3d 717, 734 (2d Cir.2004). Harris argues that the court did not have to impose such a strict "curtailment" of the cross-examination; rather the court could have referred to the trial as a "prior proceeding" while omitting the fact that it was a murder trial. However, Harley's prior testimony was, at best, ambiguous, and the government was entitled to put the statement in its proper context. The district court's decision that that context included the exact forum was a reasonable one, and not an abuse of discretion.

## C. *The Admission of Cobb's Plea Allocution*

▮ Harris argues that his conviction should be vacated because the district court erred in admitting Cobb's prior plea agreement. Since Harris did not preserve this issue, he must show plain error. *See United States v. Bautista*, 252 F.3d 141, 147 (2d Cir.2001). Harris overlooks a Supreme Court decision directly on point. In *Richardson v. Marsh*, 481 U.S. 200, 211, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987), the Court held that the "Confrontation Clause is not violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." Here, the only possible ground for distinction is that no limiting instruction was given. However, as the government points out, none was asked for. *See United States v. Matthews*, 20 F.3d 538, 551 (2d Cir.1994) ("[Defendant] did not request such an instruction

and cannot now complain that none was delivered."). Thus, this argument is rejected.

### D.  The Government's Summation

■ Harris argues that the government improperly shifted the burden of proof in its summation by questioning why Harris introduced so little evidence to support his claim that he was affiliated with Def Jam Records.

A prosecutor is "entitled to comment on a defendant's failure to call witnesses to contradict the factual character of the government's case." *United States v. Bubar,* 567 F.2d 192, 199 (2d Cir.1977). "A constitutional violation occurs only if either the defendant alone has the information to contradict the government evidence referred to or the jury 'naturally and necessarily' would interpret the summation as a comment on the failure of the accused to testify." *Id.* (quoting *United States ex rel. Leak v. Follette,* 418 F.2d 1266, 1269 (2d Cir.1969)). Harris argues that this information was something only he could provide by testifying, but he does not explain why. He does nothing to counter the government's response that Harris could have proved his affiliation with Def Jam by calling a supervisor to testify, or introducing into evidence his pay check or tax return.[2] Here, the government did nothing to comment on Harris's failure to testify, and the information was not solely his. This argument is without merit.

### 4.  William Cobb

#### A.  Vindictive Prosecution

■ Both in his pro se brief and his brief submitted by counsel, Cobb argues that his Eastern District prosecution was vindictive because of his refusal to cooperate with the government in prosecuting

Harris and McDonnell. As the Supreme Court has held, "in the 'give-and-take' of plea bargaining, there is no ... element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). Here, Cobb was free to accept or reject the government's offer. Having rejected it, he was subject to prosecution for conspiracy. This Court has said, "There is no principle of law which requires, as defendant's argument would require, that a person who commits more than one crime may be prosecuted only for one of them." *United States v. Ng,* 699 F.2d 63, 68 (2d Cir.1983) (quoting *United States v. DeMichael,* 692 F.2d 1059, 1062 (7th Cir.1982)). Nor did the district court abuse its discretion in preventing Cobb from questioning witnesses regarding his previous arrest and guilty plea for some of the substantive acts underlying the conspiracy in the Northern District of New York. Moreover, Cobb points to no specific instance where he was prevented from cross-examining a witness with a prior inconsistent statement and never asserted impeachment as the basis for these inquiries.

#### B.  Double Jeopardy

■ Cobb argues that his prosecutions in both the Northern and Eastern Districts of New York amounted to double jeopardy. The Northern District indictment charged Cobb with distributing and possessing with intent to distribute crack on May 15, May 22, September 18, September 20, September 27, and October 4, 2002. The Eastern District charged Cobb with two counts of conspiracy, and one substantive count from February 7, 2002.

---

**2.**  Nor does Harris address this issue at all in   his reply brief.

"Multiple violations of the narcotics laws arising out of a single transaction may be tried separately.... A charge of a wide-ranging narcotics conspiracy consisting of numerous transactions is certainly sufficiently distinct from a charge of a substantive violation based on a single sale." *United States v. Ortega–Alvarez*, 506 F.2d 455, 457–58 (2d Cir.1974) (internal citations omitted). As a result, double jeopardy was not violated.

### C. *Venue*

 Cobb submits that venue for his substantive count was improper in the Eastern District. This count states that "[o]n or about February 7, 2002, *within the Northern District of New York,* the defendant WILLIAM COBB ... did knowingly and intentionally distribute and possess with intent to distribute a controlled substance ...." (emphasis added). Cobb did not raise this issue before the district court, and it should be deemed waived, since where, as here, "the defect in venue is apparent on the face of the indictment, a defendant waives the right to contest the issue if he or she fails to object prior to trial." *United States v. Novak,* 443 F.3d 150, 161 (2d Cir.2006).

### D. *The Reasonableness of Cobb's Sentence*

Lastly, Cobb argues that his sentence was unreasonably high based on the sentencing disparity between offenses relating to crack and powder cocaine. The district court sentenced Cobb to twenty years in prison, the mandatory minimum sentence for an offense involving at least 50 pounds of crack committed by a defendant with a prior conviction for a felony drug offense. 21 U.S.C. § 841(b)(1)(A)(iii).

Although the Sentencing Guidelines are advisory, the discretion of a district court remains "bounded by any applicable statutory minimum and maximum." *United States v. Sharpley,* 399 F.3d 123, 127 (2d Cir.2005). By law, the district court was obligated to sentence Cobb to at least the statutory minimum, *see United States v. Jimenez,* 451 F.3d 97, 102 (2d Cir.2006), and we uphold this sentence.

For the reasons set forth above, the judgment of the district court is hereby AFFIRMED.